NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK CONLON, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> JO ANNE B. BARNHART, as : <br> COMMISSIONER OF SOCIAL : <br> SECURITY ADMINISTRATION, : <br> : <br> Defendant. : | Civ. No. 06-2918 (AET) <br><br> MEMORANDUM OPINION |

THOMPSON, U.S.D.J.

I.  Introduction

This matter is before the Court on Plaintiff Patrick Conlon's appeal of a final administrative decision by Defendant Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Social Security disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Sections 223 and 1614(a)(3)(A), respectively, of the Social Security Act ("SSA").  The Court has jurisdiction to decide this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, the decision of the Commissioner is vacated and remanded.

II.  Background

A.  Procedural History

Plaintiff filed for DIB and SSI on March 31, 2003, alleging disability as of July 20, 2002.

(R. at 81-87.) The claims were denied initially and upon reconsideration. (R. at 41-48, 52-55.) Plaintiff then requested that his claims be reviewed <u>de novo</u> before an Administrative Law Judge ("ALJ"), who denied Plaintiff's application for DIB and SSI on September 22, 2005. (R. at 57-58, 11-19.) On April 26, 2006, the Appeals Council denied Plaintiff's request to review the ALJ's determination, and thus, it became the final decision of the Commissioner. (R. at 4-6, 9-10.) Plaintiff then timely commenced this action.

  B.  <u>Plaintiff's Medical and Work History</u>

Plaintiff alleges that he is disabled due to residual pain and restricted range of motion ("ROM") caused by his bilateral hip replacement surgeries. (R. at 28, 30.) He also claims that he cannot sit or stand for more than fifteen minutes at a time, and that he can walk no more than one-half block at a time. (R. at 36.) Plaintiff's past relevant employment includes work as a cab driver and as a part-time doorman. During the course of a twelve-hour workday as a cab driver, Plaintiff typically sat for ten hours, stood for one hour, and lifted less than ten pounds. (R. at 27, 34, 116.) Plaintiff was also employed as a part-time doorman for six hours per day, two days per week, during the period for which he seeks disability.

In October, 2002, Plaintiff underwent right, and then left hip replacement surgery in March, 2003, without complications. (R. at 171-73, 204-05, 219-20.) On April 4 and May 5, 2003, at post-surgical follow-ups conducted by Plaintiff's treating orthopedist, Dr. Tozzi stated that Plaintiff's progress and overall functioning were good, that there was "perfect positioning" of the prosthesis, that Plaintiff was in no pain or discomfort, and that Plaintiff had a good ROM and stability. (R. at 146-47.) A renal consultation ordered by Dr. Tozzi, however, revealed that Plaintiff suffered from acute renal failure, hyponatremia, anemia, and hypertension. (R. at 165.)

On August 5, 2003, Dr. Dhamija, on behalf of the state of New Jersey, examined Plaintiff and found that he could walk up to three blocks continuously, did not use a cane or crutches, could bend forward almost near his ankle, and could sit continuously for one hour. Dr. Dhamija also found that Plaintiff's shoulders had a good ROM, but that his right calf was swollen. (R. at 251-54.)

On August 21, 2003, Dr. Briski, a state medical consultant, assessed Plaintiff's residual functional capacity ("RFC") and found Plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. (R. at 257.) During the course of an eight-hour weekday, Dr. Briski determined that Plaintiff could sit for about six hours and stand and/or walk for at least two hours. (Id.)

From November 14, 2004, through April 13, 2005, Plaintiff's treating physician, Dr. Laporta, treated an open wound on Plaintiff's right leg. (R. at 329-79.) On November 23, 2004, Dr. Laporta diagnosed the sore as a venous ulcer, and prescribed an ointment and an Unna boot.[1] (R. at 376-77.) After several follow-up visits, Dr. Laporta observed that the wound was slowly healing, and that Plaintiff was in no pain. (R. at 350-70.) On February 22, 2005, Dr. Laporta performed a skin graft over Plaintiff's wound, and on April 4, 2005, he pronounced that Plaintiff's wound had completely healed. (R. at 352, 359.)

On June 30, 2005, Dr. Bagner examined Plaintiff on behalf of the state, observing that Plaintiff ambulated slowly and had moderate difficulty getting on and off the examination table, though he could do so unassisted. (R. at 393.) Plaintiff's right leg had some swelling and a small,

---

[1] An Unna boot is a specialized gauze bandage containing an ointment of calamine and zinc oxide to promote healing.

unhealed wound.  (R. at 394.)  Plaintiff's cervical spine, upper and lower extremities, and hips all had full ROMs, but his lumbar spine had a limited ROM and Plaintiff experienced some pain upon movement of the lower back and hips.  (Id.)  Plaintiff's ability to push and/or pull was limited in his lower extremities, but Plaintiff's impairments did not affect his ability to sit, and Plaintiff was not uncomfortable in a seated position.  (R. at 394, 399.)

III.   Discussion

   A.   Standard of Review

This Court has plenary review of the Commissioner's application of the law, and reviews the Commissioner's findings of fact to determine whether they are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  The Court is required to review the entire record when making those determinations.  5 U.S.C. § 706; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

 The Court must affirm the Commissioner's decision if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Commissioner's decision is afforded a great amount of deference; the Court should not "set the . . . decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

   B.   The Commissioner's Five-Step Analysis for an Award of Disability Benefits

Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step evaluation to determine whether an individual is disabled. See 20 C.F.R. § 404.1520; see generally Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4). In step two, the Commissioner determines whether the claimant is suffering from a "severe" impairment. The definition of "severe," under the regulations, is a "de minimis" standard, requiring a showing beyond "slight abnormalities" that do not impact one's ability to perform basic work functions. See, e.g., Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003) (stating "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities" and that the issue of severity is "a de minimis screening device to dispose of groundless claims") (citations omitted). If the impairment is not "severe," the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant has a "severe" impairment, then the analysis continues to step three. 20 C.F.R. § 404.1520(a)(4). In step three, the Commissioner determines whether the medical evidence indicates that the impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. If so, the claimant is

automatically eligible for benefits.

If the Commissioner finds that the impairment does not match one of the listed impairments, then the analysis continues to step four. In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)). If a claimant can perform his past relevant work, he is not eligible for disability benefits. 20 C.F.R. § 404.1520(f). Finally, in step five, the Commissioner considers whether other work "exist[s] in significant numbers in the national economy that the claimant can perform given his age, education, past work experience, and residual functional capacity." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing Plummer, 186 F.3d at 428). If there is such work, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(g). In this final step, "the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428.

    C.    The ALJ's Decision

On September 22, 2005, ALJ Joseph Pachnowski determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 18.) The ALJ found that Plaintiff met steps one and two of the five-step analysis, because he was not engaged in substantial gainful activity after the date of alleged onset of disability, and because his bilateral hip problems and high blood pressure were severe. (R. at 15-16.) The ALJ found, however, that under step three Plaintiff's impairment did not match any of the impairments as listed in Appendix 1. (R. at 16.)

The ALJ explained that "the [hip] problem was corrected with surgery and no longer precludes him from performing light work." (Id.)

Because step three was not met, the ALJ then considered, under step four, whether Plaintiff's impairment prevented him from performing his past relevant work as a cab driver. (R. at 16-18.) The ALJ found that Plaintiff's allegations of debilitating pain were not credible, because Plaintiff's pain was treated with over-the-counter medications only, and because Plaintiff was able to work twelve hours per week as a doorman throughout his alleged disability period. (R. at 17.) Moreover, Plaintiff can walk without a crutch or cane, and has a normal ROM in the hips. (Id.) Because Plaintiff can stand or walk for at least two hours per workday, and Plaintiff's impairments do not restrict Plaintiff's ability to sit, the ALJ determined that the Plaintiff could return to work as a cab driver. (R. at 18.) Therefore, since the ALJ found that Plaintiff could perform his past relevant work as a cab driver under step four of the evaluation, the ALJ concluded that Plaintiff did not have a disability, as defined under the SSA, and did not award Plaintiff benefits. (R. at 18.)

Plaintiff appeals the ALJ's determination, and argues that the ALJ's determinations at steps three and four are not supported by substantial evidence, and that substantial evidence does exist in the Record to support a finding of disability pursuant to the SSA.

D.  Step Three: Equivalence to an Impairment Listed in Appendix 1

Under the regulations, Plaintiff is automatically eligible for benefits if the severity of his impairment is equivalent to the one of the listings in Appendix 1. See 20 C.F.R. § 404.1520(a)(4). Plaintiff alleges that his condition is medically equivalent to one of two sections. Listing 1.02A, Major Dysfunction of a Joint, states:

> Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.02. Under Listing 1.00B2b, "inability to ambulate effectively" means "an extreme limitation of the ability to walk" or incapability of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.00B2b. Plaintiff contends that his hip problems are medically equivalent to this section.

Additionally, Plaintiff alleges that his condition is medically equivalent to Listing 4.11:

> Chronic venous insufficiency of a lower extremity. With incompetency or obstruction of the deep venous system and one of the following:
>> A. Extensive brawny edema;
>> OR
>> B. Superficial varicosities, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy.

Plaintiff alleges that his chronic venous insufficiency, limited use of his lower extremities, non-healing sores, and a discolored leg constitute severe impairment under this section.

In considering step three in the evaluation process, the ALJ concluded that Plaintiff's impairments were not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1. (R. at 16.) In support of this conclusion, however, the ALJ merely observed that "the [Plaintiff's] problem was corrected with surgery and no longer precludes him from performing light work duties," and that Plaintiff was able to work as a cab driver despite his high

blood pressure.  (Id.)

A court may set aside the ALJ's determination if the ALJ "'merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed impairment,' without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d. Cir. 2000) (quoting Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).  This is because "[s]uch a bare conclusion is beyond meaningful judicial review."  Id.

Here, the ALJ summarized reports from Dr. Bagner and stated that "neither [Plaintiff's] orthopedic, nor his hypertension problem met or equal the Commissioners Listings."  (R. at 16.) However, the ALJ did not identify the relevant Listings, did not report the findings of other physicians, and did not explain his reasoning for his determination regarding Plaintiff's condition. Therefore, this Court will vacate and remand the case to the ALJ to provide a more detailed analysis of why Plaintiff's impairments are not equivalent to Listing 1.02A or 4.11.

E.      Step Four: Residual Functional Capacity to Perform Past Relevant Work

Plaintiff also contends that the ALJ erred in determining Plaintiff's residual functional capacity ("RFC") because the ALJ did not articulate an evidentiary explanation for his RFC determination.  The ALJ, in making an RFC determination, "must consider all evidence before him . . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason for discounting such evidence." Burnett, 220 F.3d at 121.  Furthermore, the ALJ's RFC assessment must "be accompanied by a clear and satisfactory explanation of the basis on which it rests."  Fargnoli v. Massanari, 247 F.3d at 41.

Here, the ALJ found that Plaintiff's assertions regarding his pain symptomatology were not credible, and that Plaintiff retains the RFC to perform light work. (R. at 17.) While the ALJ did provide reasons for discounting Plaintiff's allegations of pain, the ALJ failed to discuss other medical conditions that allegedly diminish Plaintiff's RFC, including venous insufficiency, renal failure, respiratory problems, and obesity. (R. at 31-32, 80, 165.)

Furthermore, Plaintiff alleges that the ALJ's conclusion that Plaintiff is able to perform his past relevant work is not supported by substantial evidence. Although Dr. Bagner "verified the claimant is able to perform light work activities," the ALJ seemed to ignore other evidence that indicated that Plaintiff was incapable of meeting the requirements for light work activity. (R. at 17.) According to the Dictionary of Occupational Titles, light work activity requires a worker's capacity to sustain a significant degree of walking or standing, or sitting most of the time but also requiring pushing and/or pulling of arm or leg controls.[2] Dr. Bagner, however, only determined that Plaintiff could walk and stand at least two hours per workday, and that pushing and/or pulling was limited in the lower extremities. (R. at 398-99.) Moreover, Plaintiff explained that remaining seated for long periods of time, as is typical of a cab driver, would be uncomfortable due to swelling in his legs. In addition, Plaintiff's ability to use foot controls would likely be limited. (R. at 18.) Since the ALJ did not fully articulate his analysis of the above relevant evidence before him, this Court will vacate and remand the case to the ALJ to provide a more detailed analysis of Plaintiff's RFC determination.

---

[2] DICTIONARY OF OCCUPATIONAL TITLES (1991), *available at* http://www.occupationalinfo.org/appendxc_1.html.

IV.     Conclusion

For the above-mentioned reasons, the Court vacates and remands the Commissioner's determination.  An appropriate order is filed herewith.

     s/ Anne E. Thompson    <br>
ANNE E. THOMPSON, U.S.D.J.

Dated: Feb. 15, 2007